United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

QUIANA LA NAY CHASE,

    Plaintiff,

    vs.

CAROLYN W. COLVIN,

    Defendant.

Case No.: 4:13-cv-01816-KAW

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT

Quiana La Nay Chase ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant").  Pending before the Court are the parties' cross-motions for summary judgment.  Having considered the papers filed by the parties and the administrative record, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

## I.      BACKGROUND

### A.    Plaintiff's applications for Social Security benefits

Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") on January 5, 2009 and a Title XVI application for Supplemental Security Income ("SSI") on May 21, 2009.  (Administrative Record ("AR") at 188-94.)  She alleged that she became disabled on December 7, 2007 due to bipolar, depression, anxiety, arthritis in hands, "damaged nerve in left leg problems," and back problems.  (*Id.* at 188, 192, 277.)  The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration.  (*Id.* at 74, 84, 94, 101.)

United States District Court
Northern District of California

**B.     The administrative hearing**

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 125.)  The ALJ held a hearing on March 24, 2011.  (*Id.* at 43-67.)  Plaintiff, who was assisted by a non-attorney representative, Andrew Ragnes, testified at the hearing.  (*Id.* at 46, 47.)  A vocational expert ("VE") also testified at the hearing by telephone.  *(Id.)*

1.     Plaintiff's testimony

Plaintiff, who was 33 years old at the time of the hearing, testified that she possesses a high school diploma and has completed "some college."  (*Id.* at 48.)  With respect to her work history, Plaintiff testified that she was a former registered nurse and had also worked in childcare from January 2009 to August 2009, watching three to five toddlers in her home.  (*Id.* at 48-49.)  She also indicated that prior to 2008, she worked as an assistant nurse and in food service.  *(Id.)*  She had done some clerical work before that.  (*Id.* at 51.)  She stated that she stopped working because of her "bipolar and [the] arthritis" in her hands.  *(Id.)*  According to Plaintiff, "the longest job [she] had was the nursing and that was about a year."  *(Id.)*

She indicated that her bipolar symptoms include "outbursts and exploding."  (*Id.* at 52.)  She explained that the triggers for these symptoms vary:  "It depends, somebody can drop something or a person could just go against me.  Playing with my children,[1] you know, targeting my children, there's things of that sort. . . .  Or somebody can bump me the wrong way."  *(Id.)*  Plaintiff also reported that she has trouble sleeping at night and takes sleeping pills.  *(Id.)*  She stated that, with respect to her depression:  "Sometimes I just burst out crying.  I have anxiety too, anxiety with depression.  So sometimes I can't breathe, it's hard for me to breathe.  And sometimes I sit and rock back and forth holding my chest."  *(Id.)*  She also testified that she suffers from arthritis, as a result of which she "can't comb [her] hair.  [She] ha[s] someone else to comb [her] hair.  And [she] pays people to comb [her] daughter's hair."  (*Id.* at 53.)  She stated that she takes over-the-counter Aleve or Tylenol for her arthritis.  *(Id.)*

Plaintiff also testified that she weighs "[a]bout three something."  (*Id.* at 57.)  She indicated that walking hurts her back and that when she goes to the grocery store, she places her items on the

---

[1] The record reflects that Plaintiff has five children, who are not in her care.  AR at 189, 349, 335.

counter to avoid bending.  *(Id.)*  She also stated that she can walk up "[a] little bit of stairs, [but] not that many" without experiencing shortness of breath or back pain."  *(Id.* at 58.)  She testified that she "can get down on the floor but it's . . . hard to get back up."  *(Id.)*  She also stated that she can push her baby's stroller, cannot pull anything, and has sensitivities to smoke and heat.  *(Id.)*  She indicated that she smokes cigarettes and coughs from smoking.  *(Id.)*

With respect to her ability to read, write, and do arithmetic, Plaintiff testified "I can't read and write too good.  I'm like on maybe like a fourth grade level of reading.  I can read little kids books but I can't read grown-up books."  *(Id.* at 59.)  She stated that while she graduated from Western Career College in Sacramento as a registered nurse, her instructor was aware that Plaintiff could not read or write too well, but she just "slid right through the cracks."  *(Id.)*

### 2.    The VE's testimony

A VE also testified at the hearing by telephone.  *(Id.* at 60.)  She classified Plaintiff's past relevant work as a childcare provider and a registered nurse as medium work.  *(Id.* at 61, 63.)  She classified Plaintiff's prior work as a fast food manager and a clerical worker as light work.  *(Id.* at 62, 63.)  In response to the ALJ's question of whether an individual who can't read at fourth or fifth grade level can actually work as a registered nurse, the VE answered "no."  *(Id.* at 66.)

### C.    The ALJ's decision

On August 26, 2011, the ALJ issued an unfavorable decision.  *(Id.* at 28-36.)  The ALJ followed the five-step sequential process that governs Social Security disability determinations.  *See* 20 C.F.R. §§ 404.1520(a); 416.920(a).  At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity since December 7, 2007, the alleged onset date, as she performed childcare from January 2009 to August 2009.  *(Id.* at 30.)  At step two, the ALJ determined that Plaintiff suffers from two severe impairments:  major depressive disorder and polysubstance abuse. *(Id.)*  The ALJ declined to identify obesity and hypertension as severe impairments because she determined that there was no evidence that these conditions cause any functional limitations.  *(Id.)*  She also declined to identify arthritis as a severe impairment despite Plaintiff's complaint that she has difficulty combing her hair.  *(Id.)*  The ALJ determined that none of the medical evidence confirmed any functional limitation with respect to her hands.  *(Id.)*

United States District Court
Northern District of California

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, specifically, listings 12.04 (affective disorders) and 12.09 (substance addiction disorders).[2]  (*Id.* at 31-32.)  In reaching this determination, the ALJ found that Plaintiff did not satisfy the paragraph B criteria.[3]  She determined that Plaintiff has no restriction in activities of daily living, based on Plaintiff's own reports that she has no problems with personal care, is able to prepare her own meals, can do some household chores on a regular basis, can use public transportation, and is capable of handling her own funds.  (*Id.* at 31.)  The ALJ also found that Plaintiff has no more than mild difficulties in the area of social functioning, based on Plaintiff's reports that she attends church regularly and has no difficulty getting along with family, friends, neighbors, or others.  *(Id.)*  She also found that Plaintiff has moderate difficulties in the areas of concentration, persistence, or pace and found no evidence of episodes of decompensation.  *(Id.)*

The ALJ further determined that Plaintiff did not satisfy the paragraph C criteria.[4]  (*Id.* at 32.)  She found that the medical records did not reflect "a residual disease process that has resulted

---

[2] In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder that are incompatible with the ability to work.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00.

[3] In order to satisfy the criteria in paragraph B, Plaintiff's paragraph A impairment must result in at least two of the following:

1.  Marked restriction in the activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
4.  Repeated episodes of decompensation, each of extended duration, meaning "three episodes within 1 year, or on average of once every 4 months, each lasting for at least 2 weeks."

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04B.

[4] In order to satisfy the criteria in paragraph C, Plaintiff's paragraph A impairment, of at least 2 years' duration, must cause more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

United States District Court
Northern District of California

in such marginal adjustment that a minimal increase in mental demands or environment would be predicted to cause decompensation, or an inability to function outside a highly supportive living arrangement."  (*Id.* at 32.)

Before proceeding to step four, the ALJ concluded that Plaintiff (1) has the residual functional capacity to perform a full range of work at all exertional levels, (2) is able to perform simple repetitive tasks, and (3) is able to accept instructions from supervisors and get along with people in the workplace.  *(Id.)*  In determining Plaintiff's residual functional capacity, the ALJ placed great on Dr. Shefayee's opinion, who was the only examining mental health physician to examine Plaintiff and complete an assessment.  *(Id.)*  The ALJ found that the opinion was consistent with the mental status examinations and the treatment records that showed that Plaintiff's symptoms were well managed and stable while on medication.  *(Id.)*

Dr. Shefayee completed a comprehensive psychiatric evaluation on July 17, 2009.  (AR at 401.)  In his report, he noted Plaintiff's complaints of crying for days, staying up late, fluctuating moods, and inability to socialize with people.  *(Id.)*  He indicated that Plaintiff had an irritable mood and was unable to perform serial sevens.  (*Id.* at 403.)  Dr. Shefayee diagnosed Plaintiff with bipolar disorder and major depression, not otherwise specified.  *(Id.)*  He assigned Plaintiff a Global Assessment of Functioning ("GAF") score[5] of 50-55.  *(Id.)*  He opined that the claimant was able to

---

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04C.

[5] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1165 n.1 (9th Cir. 2012).  The score ranges from zero to 100, and it serves as a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).  A GAF score of 51 to 60 indicates only moderate difficulty in functioning.  *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011).  People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers.  *Id.*

United States District Court
Northern District of California

perform simple and repetitive tasks, manage her own funds, care for her daily needs, accept instructions from supervisors, and get along with people in the workplace.  (*Id.* at 404.)

With respect to Plaintiff's physical impairments, the ALJ adopted the opinion of Dr. Seu, who found no physical limitations, and whose conclusions were well supported by findings on physical examination and consistent with the treatment records available since the alleged onset date.  (AR at 33, 408.)  Dr. Seu completed a comprehensive internal medicine evaluation on July 23, 2009.  (*Id.* at 405.)  He noted Plaintiff's chief complaints of nerve damage in her left leg and arthritis.  (*Id.*)  Dr. Seu's reports reflects Plaintiff's claim that the nerve damage resulted from an epidural given to her approximately eight years prior to the date of the evaluation and that her arthritis causes her pain when she combs her hair and cuts meat.  (*Id.*)  He noted that Plaintiff is morbidly obese, and appeared physically comfortable, with no trouble walking, sitting, standing, or using her hands to handle the small baby she had brought with her.  (*Id.*)  He measured Plaintiff's height at 5'1" and her weight at 325 pounds.  (*Id.* at 406.)

Dr. Seu's diagnoses were as follows:  "1.  Nonspecific left leg complaints.  Despite claimant's complaints of nerve damage there were no positive findings on neurologic exam today.  She had a normal gait and normal strength as well as sensory findings.  2.  Nonspecific hand complaints.  3. Hypertension."  (*Id.* at 408.)  He opined that (1) Plaintiff should be able to sit, stand, walk in an eight-hour workday "without limitations," (2) Plaintiff "does not require any assistive device for ambulation mobility," (3) the amount of weight Plaintiff should be able to lift and carry "is without limitations," (4) there are no "postural limitations in bending, stooping or crouching," (5) there are no "manipulative limitations in reaching, handling, feeling, grasping, and fingering," and (6) there are no "workplace environmental limitations."  (*Id.*)

The ALJ placed less weight on Dr. Brown's opinion, as he did not have the opportunity to examine Plaintiff.  (*Id.* at 34.)  Dr. Brown completed a psychiatric review technique form, in which he indicated that Plaintiff has mild restrictions in the areas of daily living activities and maintaining social functioning, a moderate restriction in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation.  (*Id.* at 422.)  He also determined that there was no evidence of any of the paragraph C criteria.  (*Id.* at 423.)  Dr. Brown also completed a mental residual

United States District Court
Northern District of California

functional capacity assessment on August 27, 2009. (*Id.* at 426-29.) In that assessment, he indicated that Plaintiff had no significant limitations in any areas except in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, areas in which he opined Plaintiff has a moderate limitation. (*Id.* at 426, 427.) Dr. Brown also opined that Plaintiff is able to understand and remember simple routines and instructions, maintain and sustain a work schedule, be supervised, interact with coworkers, handle minimal public contact, and adapt with typical stress and simple changes. (*Id.* at 428.)

The ALJ placed little weight on Dr. Lee's opinion, whose findings she described as consistent with a range of light exertional activity. (*Id.* at 34.) The ALJ determined that Dr. Lee's opinion was not supported by clinical findings of any treating or examining medical source in the record. *(Id.)* In his physical residual functional capacity assessment, Dr. Lee indicated that Plaintiff's body mass index is 61.5, and he noted "arthritis in both hands" as one of Plaintiff's alleged impairments. (*Id.* at 430.) Dr. Lee believed that the consultative examiner's finding of no physical limitations was "overly ambitious when th[e] claimant's extreme obesity alone is considered." (*Id.* at 435.)

The ALJ also examined treatment records from Pathways to Wellness. (*Id.* at 32-33.) She considered a November 2008 assessment that was completed in connection with a child custody matter. *(Id.)* The initial assessment form noted no psychiatric history, no psychiatric medications, a history of using crack cocaine, and recent marijuana use. (*Id.* at 32-33.) The mental status examination indicated that Plaintiff exhibited a depressed mood and flat affect, but the ALJ noted that findings were otherwise unremarkable. *(Id.)* The assessment included a diagnosis of major depressive disorder (recurrent), mild limitations in activities of daily living, social functioning/relationships, maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.* at 33.) In addition, the ALJ considered treatment notes indicating that Plaintiff returned to the facility in May and June, reporting increased depression and anxiety, and

United States District Court
Northern District of California

1   Plaintiff's June 25, 2009 report that she felt better on medication.  *(Id.)*  The ALJ also considered a

2   mental impairment questionnaire completed by Dr. Tom, who treated Plaintiff on a monthly basis

3   since November 17, 2008.  (*Id.* at 442.)  In that questionnaire, Dr. Tom listed diagnoses of major

4   depressive disorder, a history of polysubstance abuse, morbid obesity, and arthritis.  *(Id.)*  He noted

5   Plaintiff's symptoms of sleep disturbance, mood disturbance, emotional lability, hostility, and

6   irritability.  (*Id.* at 443.)  He also indicated that Plaintiff's medications include Geodon, Ativan,

7   Cymbalta, and Ambien.  (*Id.* at 444.)  He opined that Plaintiff's prognosis was good.  *(Id.)*

8   In response to the questions of whether Plaintiff (1) has a low I.Q. or reduced intellectual

9   functioning, (2) would be absent from work as a result of her impairments, (3) would have difficulty

10   working at a regular job on a sustained basis, or (4) would be able to manage benefits in her best

11   interest, Dr. Tom stated "unknown." (*Id.* at 445.)  He also explained that his facility was a

12   medication management clinic and that Plaintiff needs a referral for a therapist.  (*Id.* at 445.)  He did

13   not complete the mental residual functional capacity assessment.  (*Id.* at 447.)

14   In light of all of the above, the ALJ found that Plaintiff's medically determinable

15   impairments could reasonably be expected to cause the alleged symptoms but that her complaints

16   about the intensity, persistence, and limiting effects of those symptoms were not credible to the

17   extent they were inconsistent with the ALJ's residual functional capacity assessment.  *(Id.)*  The ALJ

18   noted that after the hearing, Plaintiff failed to attend two scheduled consultative examinations,

19   claiming that she overslept the first time and was attending a drug program during the time

20   scheduled for the second examination.  *(Id.)*  The ALJ determined that this failure to cooperate

21   undermined Plaintiff's credibility, as did her ability to care for three to five toddlers from January

22   2009 to August 2009, her past incarceration for fraud,[6] and her conservative treatment despite

23   reports that Plaintiff improved when she complied with medication.  *(Id.)*

24   With respect to the notes of child welfare worker Pat Cripe, the ALJ rejected Plaintiff's

25   argument that the notes were entitled to great weight on the issue of Plaintiff's general mental health

26   condition because they reflected Plaintiff's capacity to care for her children or get along with others.

27

28   [6] The record indicates that Plaintiff was arrested on or about December 10, 2006 for check forgery.
    AR at 502.

(*Id.* at 34-35.)  An interim review report by Ms. Cripe indicated that Plaintiff had threatened her and an individual in a drug treatment program.  (*Id.* at 343.)  Ms. Cripe noted that Plaintiff was in great need of completing a substance abuse program and maintaining compliance with her case plan, which included medication compliance and fully engaging in therapy.  (*Id.* at 345.)  The ALJ determined that Plaintiff's child welfare worker was not an acceptable medical source, that Plaintiff's behavior toward her was not probative of Plaintiff's ability to perform work-related activities, and that the notes concerned custody issues, not medical evidence.  (*Id.* at 35.)

The ALJ also rejected Plaintiff's argument that she is clean and sober, noting that in August 2010, Plaintiff had tested positive for methamphetamine and cocaine, had reported that she regularly smoked marijuana, and had been terminated from court ordered drug testing due to noncompliance. (*Id.* at 35.)  The ALJ further stated:  "Though it is not confirmed by treating sources, I find it likely that her mental health symptoms are related to her drug use." *(Id.)*

At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work, which the vocational expert who testified at the hearing identified as childcare, fast food service manager, sales manager, registered nurse, and office clerk. *(Id.)*

At step five, the ALJ identified Plaintiff as a younger individual, based on her age (30) as of the alleged onset date. *(Id.)*  She also found that Plaintiff has at least a high school education and is able to communicate in English. *(Id.)*  The ALJ considered transferability of job skills immaterial to the determination of disability because the Medical-Vocational Rules ("grids") supported a finding that Plaintiff is "not disabled" irrespective of transferable job skills. *(Id.)*  The ALJ thus concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Plaintiff can perform. *(Id.)*  The ALJ noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations.  However, [b]ased on [her] experience, [she determined that] these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *(Id.)*  On this basis, she determined that section 204.00 of the Medical-Vocational Guidelines directed a finding of "not disabled." *(Id.)*  The ALJ thus concluded that Plaintiff has not

United States District Court
Northern District of California

been under a disability from December 7, 2007, the alleged onset set, through August 26, 2011, the date of her decision.  *(Id.)*

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  (*Id.* at 3-6.)  She also submitted additional evidence with her request for review, including a November 10, 2010 Social Services Agency Report, a July 11, 2011 status review from Alameda County Social Services, and a list of halfway houses.  (*Id.* at 7, 496-527.)  The Appeals Council denied review on December 13, 2012, and the ALJ's decision became the final decision of the Commissioner.  (*Id.* at 3-6.)

### D.     Plaintiff's action for judicial review

Plaintiff filed her complaint on April 22, 2013, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  Her motion for summary judgment followed on January 5, 2014.  (Pl.'s Mot. Summ. J., Dkt. No. 22.)  The Commissioner filed her cross-motion and opposition on March 5, 2014.  (Def.'s Mot. Summ. J., Dkt. No. 31.)  On March 18, 2014, the parties stipulated to extending the due date for Plaintiff's reply to April 18, 2014, which the Court approved on March 19, 2014.  (Stipulation & Order, Dkt. No. 33.)  Plaintiff did not file her reply until May 7, 2014.  (Pl.'s Reply, Dkt. No. 34.)

On May 22, 2014, the Commissioner filed an objection to Plaintiff's reply, arguing that it was untimely and presented new issues not raised in Plaintiff's original motion for summary judgment.  (Def.'s Objection, Dkt. No. 36.)  The Court deemed the filing as a motion to strike, and in the alternative, for leave to file a sur-reply.  (May 28, 2014 Order, Dkt. No. 37.)  Plaintiff filed a response, in which she indicated that the purportedly "new and material evidence submitted was unknown at the time Plaintiff's motion for summary judgment was filed . . . . "  (Pl.'s Response, Dkt. No. 38.)  Though Plaintiff did not address why her reply should not be stricken as untimely, the Court nonetheless declined to strike the pleading and granted the Commissioner leave to file a sur-reply by August 8, 2014.  (July 9, 2014 Order, Dkt. No. 39.)  The Commissioner did not file her sur-reply by that date.  Instead, on August 19, 2014, the parties filed a stipulation to extend the deadline for the Commissioner's sur-reply, which was attached to the stipulation, to that same date.

1   (Stipulation, Dkt. No. 41.)  The Court approved the stipulation on August 20, 2014.  (Stipulation &

2   Order, Dkt. No. 42.)

3                                   **II.      ANALYSIS**

4   **A.      Remand pursuant to sentence six of 42 U.S.C. § 405(g)**

5          In her reply brief, Plaintiff argues, for the first time, that new and material evidence warrants

6   a remand pursuant to sentence six of 42 U.S.C. § 405(g).  (Pl.'s Reply at 1.)  In a supporting

7   declaration, Plaintiff's non-attorney representative asserts that he also represents Plaintiff in

8   connection with another application she submitted on April 22, 2013.  (Pl.'s Reply, Ragnes Decl. ¶¶

9   2-6.)  He explains that he downloaded the purported new and material evidence at issue in this case

10  on March 31, 2014, after being granted access on or about March 18, 2014.  (Pl.'s Reply, Ragnes

11  Decl. ¶¶ 3, 6.)

12         The documents Plaintiff describes as new and material evidence are as follows:  various

13  records from John George Psychiatric Pavilion, which relate to visits that occurred on August 6,

14  2011, September 8, 2011, and May 27, 2012, a psychological disability evaluation completed by Dr.

15  Faith Tobias on October 17, 2013, an internal medicine evaluation completed by Dr. Frank Chen on

16  October 2, 2013, and various materials the SSA produced in connection with a subsequent benefits

17  application that Plaintiff submitted in May 2013.  (Ragnes Decl., Exs. A-E.)

18         Sentence six of 42 U.S.C. § 405(g) provides:

19         The court may, on motion of the Commissioner of Social Security made for good cause
           shown before the Commissioner files the Commissioner's answer, remand the case to the
20         Commissioner of Social Security for further action by the Commissioner of Social Security,
           and it may at any time order additional evidence to be taken before the Commissioner of
21         Social Security, but only upon a showing that there is new evidence which is material and
           that there is good cause for the failure to incorporate such evidence into the record in a prior
22         proceeding . . . .

23  *See Akopyan v. Barnhart*, 296 F.3d 852, 854-55 (9th Cir. 2002) ("Sentence six remands may be

24  ordered in only two situations:  where the Commissioner requests a remand before answering the

25  complaint, or where new, material evidence is adduced that was for good cause not presented before

26  the agency.") (citation omitted).

27

28

                                              11

United States District Court
Northern District of California

1  New evidence is material when "it bears directly and substantially on the matter in dispute,

2  and if there is a reasonable possibility that the new evidence would have changed the outcome of the

3  determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010).  A subsequent ALJ's decision

4  is material and warrants remand "where an initial denial and subsequent award [are not] easily

5  reconcilable on the record before the court."  *Id.* at 1035.  To demonstrate good cause, a claimant

6  must show that the new evidence was unavailable earlier.  *Mayes v. Massanari*, 276 F.3d 453, 463

7  (9th Cir. 2001).  A claimant does not meet the good cause requirement by merely obtaining a more

8  favorable report once his or her claim has been denied.  *Id.*  The claimant must also establish good

9  cause for not having sought an expert's opinion earlier.  *Id.* (citation omitted).

10  Here, Plaintiff argues that the new evidence she describes as material warrants a remand

11  because it shows (1) that the ALJ failed to address each of Plaintiff's severe impairments established

12  "by the record of impairments in her [subsequent] application," (2) the ALJ's determination that

13  Plaintiff had a high school diploma and worked as a registered nurse is contradicted by Plaintiff's

14  borderline IQ of 72, which also satisfies the listing for intellectual disability, and (3) that the

15  objective measure of Plaintiff's writing, computational, and memory skills establish "her inability to

16  perform tasks commensurate with such an elevated skill level."  (Pl.'s Reply at 2, 3.)  These

17  arguments are unavailing.

18  The Commissioner persuasively argues that the evidence Plaintiff offers in support of her

19  motion for a sentence six remand is not material.  (See Def.'s Sur-Reply at 3, 5, 6.)  First, while

20  Plaintiff's allegations of additional impairments constituted changed circumstances, which warranted

21  a departure from the ALJ's decision, the SSA still denied Plaintiff's subsequent application.  (Ragnes

22  Decl., Exs. C, D.)  Second, the treatment records from John George Psychiatric Pavilion reveal

23  diagnoses of bipolar disorder NOS, psychotic disorder NOS, amphetamine abuse, amphetamine

24  dependence, amphetamine intoxication.  (Ragnes Decl., Ex. A.)  The Commissioner correctly asserts

25  that Plaintiff has failed to articulate why this evidence is material.  (*See generally* Pl.'s Reply.)

26  Indeed, it appears that these diagnoses are not inconsistent with the ALJ's findings that Plaintiff

27  suffers from polysubstance abuse and a major depressive disorder.  (*See* AR at 30, 31.)

28

United States District Court
Northern District of California

Third, the consultative psychological evaluation Dr. Faith Tobias completed reflected Plaintiff's reports that she is able to complete all activities of daily living, with restrictions related to her physical health problems, manages her own finances, attends doctor's appointments, eats at shelters, watches television, and listens to music.  (Ragnes Decl., Ex. B.).  Dr. Tobias measured Plaintiff's full scale IQ at 72, assigned a GAF score of 61, ruled out bipolar disorder NOS, and diagnosed psychotic disorder NOS, amphetamine dependence in sustained full remission (as per Plaintiff's reports), and cannabis abuse versus dependence in sustained full remission (also as per Plaintiff's reports).  *(Id.)* While Dr. Tobias described Plaintiff as a short, obese, right-handed African-American woman, who looked her stated age, obesity was not included as a diagnosis.  *(Id.)* Dr. Tobias also opined that Plaintiff has no impairments to mild impairments in the areas of following and remembering simple instructions and maintaining adequate pace or persistence in performing one or two step simple repetitive tasks.  *(Id.)*  She further opined that Plaintiff has a mild impairment in the areas of following and remembering complex or detailed instructions, maintaining adequate persistence or pace in performing complex tasks, maintaining adequate attention and concentration, adapting to changes in job routine, withstanding the stress of a routine work day, maintaining emotional stability and predictability, and appropriately interacting with co-workers, supervisors, and the public on a regular basis.  *(Id.)*

Dr. Tobias' assessment does not disturb the ALJ's decision.  The ALJ determined that Plaintiff has no restriction in daily living activities, no more than mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace.  (AR at 31.) The ALJ determined that Plaintiff is able to perform simple repetitive tasks, accept instructions from supervisors, and get along with people in the workplace.  (*Id.* at 32.)

Dr. Tobias' assessment of Plaintiff's IQ also does not disturb the ALJ's findings that Plaintiff had at least a high school diploma, worked as a registered nurse, and could read and understand English.  At the administrative hearing, Plaintiff testified that she possessed a diploma and worked as a registered nurse for a year.  (*Id.* at 51.)  The VE also testified that a person who did not read at fourth or fifth grade level could not actually work as a registered nurse.  (*Id.* at 66.)  In light of this,

13

United States District Court
Northern District of California

the Court is not convinced that a single contrary assessment would be sufficient to rebut Plaintiff's own testimony and that of a VE.

Moreover, Plaintiff's argument that Dr. Tobias' measurement of her IQ, which she identified as 72, meets the listing for intellectual disability also fails.  (Pl.'s Reply at 2.)  Individuals with an IQ higher than 70 do not meet the listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05 C.  In addition, as Plaintiff has not argued how she might equal the listing, she has waived any such argument.  *See Schlegal v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1210 n.4 (9th Cir. 2013) (assertions unsupported by argument deemed waived).

Nonetheless, even if Plaintiff could show that the evidence at issue was material, Plaintiff still fails to explain why she could not have obtained it prior to the completion of the briefing in this case.  As the Commissioner argues, the records from John George Psychiatric Pavilion date back to August 6, 2011, September 8, 2011, and May 27, 2012, well before the Appeals Council denied review on December 13, 2012 .  (Def.'s Sur-Reply at 3, 4.)  The fact Plaintiff's representative failed to obtain these records, chose not to access them until March 2014, or that Plaintiff herself delayed reporting this information to the SSA until she applied for benefits a third time in 2013, does not support a finding of good cause.  *See Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (no good cause where claimant failed to submit evidence of a condition of which he was aware at the time of the administrative proceedings); *see also* 20 C.F.R. § 404.1740 ("A representative must . . . [a]ct with reasonable promptness to obtain information and evidence that the claimant wants to submit in support of his or her claim . . . . "), 20 C.F.R. § 404.1710(a)(1) ("Your representative may, on your behalf . . . obtain information about your claim to the same extent that you are able to . . . .").  Moreover, while Plaintiff asserts that an assessment of Plaintiff's impaired intellectual functioning was not available until after the initial briefing was completed in this case, if Plaintiff had attended either of the psychological consultative examinations scheduled in May 2011 or June 2011, *see* AR at 366, such evidence could have been available.[7]  In light of this, Plaintiff has

_____

[7] In her decision, the ALJ noted that Plaintiff missed the first consultative examination because she overslept and the second consultative examination because she was allegedly attending a residential treatment program.  The record does not show that Plaintiff's alleged attendance at such a program

14

failed to demonstrate good cause justifying a sentence six remand.  *Cf. Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied.") (citation omitted).  That relief is, therefore, denied.

### B.    Remand pursuant to sentence four of 42 U.S.C. § 405(g)

Pursuant to sentence four of 42 U.S.C. § 405(g), the court's jurisdiction is limited to determining whether the SSA's denial of benefits is supported by substantial evidence and free of legal error.  A court may reverse the Commissioner's denial of disability benefits only when the decision is 1) based on legal error or 2) not supported by substantial evidence in the record as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance."  *Id.* at 1098.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must consider the evidence as a whole, weighing both the evidence that supports, and the evidence that undermines, the Commissioner's decision.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  The court, however, may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence."  *Id.* (internal quotations and citations omitted).  Furthermore, the court's review is limited to the reasons the ALJ provided in the disability determination.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The court "may not affirm the ALJ on a ground upon which the he did not rely.").

Plaintiff moves for summary judgment, seeking reversal of the Commissioner's final decision, and remand for further proceedings or, in the alternative, for payment of benefits, pursuant to sentence four of 42 U.S.C. § 405(g).  (Pl.'s Mot. Summ. J. at 7-8.)  She argues that reversal of the

was ever confirmed.  *See* AR at 368 ("Claimant's representative has called the Mandela House II and has not been provided with any information as to Claimant's stay.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Commissioner's decision is warranted because the ALJ erred (1) by failing to properly weigh the opinions of consultative and non-examining physicians and the report of social worker Pat Cripe, (2) by failing to properly develop the record, (3) by improperly determining that Plaintiff's drug use was material without following the proper framework, and (4) by failing to carry the Commissioner's burden of proof at step five.  The Court addresses each of these arguments in turn.

      1.    <u>The ALJ properly weighed the medical and non-medical evidence in the record.</u>

          *a.    Medical evidence*

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (internal quotations and citation omitted).  When the opinion of an examining doctor is contradicted by another doctor, an ALJ may reject it only by giving "specific and legitimate reasons that are supported by substantial evidence in the record. " *Id.* at 830-31 (internal quotations and citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotations and citation omitted).

Plaintiff argues that the ALJ erred by placing great weight on Dr. Shefayee's opinion without weighing all the factors set out in 20 C.F.R. § 416.927(c).  (Pl.'s Mot. Summ. J. at 8.)  Specifically, Plaintiff claims that the ALJ ignored the fact that the opinion "is internally inconsistent as [Dr. Shefayee] found [Plaintiff] with a GAF functioning of 50-55 where a GAF score of 41 to 50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep a job)."  (*Id.* at 8-9.)  She also contends that the ALJ "did not evaluate the supportability and consistency of Dr. Shefayee's opinion in light of his GAF 50 score of the severity of [Plaintiff's] mental impairments and Dr. Brown's more restrictive opinion."  (*Id.*)  According to Plaintiff, "[t]he weight given Dr. Shefayee's opinion is more troubling still when considered against the background of Defendant's failure to provide her consulting physician with all records relevant to the assessment being made."  (*Id.*)

United States District Court
Northern District of California

1       Plaintiff also argues that the ALJ erred when he did not identify her obesity as a severe

2 impairment, did not consider her obesity-related limitations when he determined her residual

3 functional capacity, and did not determine that her extreme obesity equaled Listing 1.02.  (Pl.'s Mot.

4 Summ. J. at 12, 13.)  She contends that instead of relying on the opinion of Dr. Sue, a consultative

5 examiner, he should have relied on the opinion of Dr. Lee, who opined that Plaintiff was extremely

6 obese and who criticized Dr. Sue's opinion as "overly ambitious when this claimant's extreme

7 obesity alone is considered."  (AR at 435.)  According to Plaintiff, the ALJ's determination "that

8 obesity medical evidence failed to set forth evidence of effects of obesity" was erroneous.  (Pl.'s

9 Mot. Summ. J. at 13.)

10       Despite Plaintiff's arguments to the contrary, the ALJ did not err when weighing the medical

11 evidence.  As the Commissioner argues, the ALJ reviewed all of the medical opinion evidence,

12 assigned weight to each opinion, and gave reasons supported by substantial evidence.  (Def.'s Mot.

13 Summ. J. at 2.)  The ALJ placed great weight on Dr. Shefayee's opinion, as she was the only

14 examining mental health physician to complete an assessment.  *(Id.)*  The ALJ found that the opinion

15 was consistent with the mental status examinations and the treatment records that showed that

16 Plaintiff's symptoms were well managed and stable while on medication.  *(Id.)*  This is consistent

17 with Ninth Circuit law, which provides that the opinion of an examining physician is entitled to

18 greater weight than the opinion of a nonexamining physician, in this case, Dr. Brown.[8]  *See Lester*,

19 81 F.3d at 830-31.  Thus, the argument that the ALJ erred by not weighing all of the factors in 20

20 C.F.R. § 416.927[9] lacks merit.  True, the ALJ focused entirely on Dr. Brown's status as a

21 nonexamining physician without considering the supportability of his diagnosis, its consistency, or

22 any of the other factors in § 416.927.  Even if the ALJ had weighed each and every factor, however,

23

24 ───────────────────

[8] Plaintiff argues that the ALJ failed to articulate the weight, if any, she assigned to Dr. Brown's

25 opinion and that she failed to explain the reasons "for assigning that weight or for rejecting the opinion altogether."  Pl.'s Mot. Summ. J. at 11.  This is incorrect.  The ALJ placed "less weight" on

26 Dr. Brown's opinion "because he did not have the opportunity to examine the claimant."  AR at 34.

27 [9] These factors include:  (1) length of treatment relationship, (2) frequency of examination, (3) nature and extent of treatment relationship, (4) supportability of diagnosis, (5) consistency, and (6)

28 specialization.  20 C.F.R. § 416.927.

1    Plaintiff does not explain how that would have altered the ALJ's decision.  On this record, the Court

2    is not convinced that if the ALJ had done so, she would have found Plaintiff to be disabled.  Indeed,

3    Dr. Brown opined that Plaintiff "is able to maintain/sustain a work schedule."  (AR at 428.)  For this

4    reason, even assuming that the ALJ's failure to weigh each and every factor in 20 C.F.R. § 416.927

5    constitutes error, it is harmless error.  *See Molina*, 674 F.3d at 1115 (error harmless where it would

6    not alter the ALJ's decision).  Plaintiff's argument that the ALJ should have favored Dr. Brown's

7    opinion over that of Dr. Shefayee is, therefore, unavailing.[10]

8        With respect to Plaintiff's arguments concerning her alleged obesity, the Court also declines

9    to assign error to the ALJ.  She noted that "the medical record includes diagnoses of obesity and

10   hypertension, [but] there is no evidence that these conditions cause any functional limitations."  (AR

11   at 31.)  For this reason, she concluded that Plaintiff's obesity and hypertension are not severe.  *(Id.)*

12   In reaching this conclusion, the ALJ adopted the opinion of Dr. Seu, who found no limitations and

13   whose "conclusions are well supported by his findings on physical exam and consistent with the

14   treatment records since the alleged onset date."  (AR at 34.)  That Dr. Lee, a state agency consultant,

15   who did not examine Plaintiff, categorized Dr. Seu's opinion as "overly ambitious when this

16   claimant's extreme obesity alone is considered" does not permit this Court to second guess the ALJ.

17   *See Lester*, 81 F.3d at 821 (opinion of a nonexamining medical advisor cannot by itself constitute

18   substantial evidence that justifies the rejection of the opinion of an examining or treating physician).

19   Moreover, Plaintiff's reliance on a 2006 orthopedic evaluation is also misplaced.  Plaintiff claims

20   that report "contains evidence indicating both that plaintiff has a decreased ability to ambulate

21

22   [10] The basis for Plaintiff's argument that Dr. Shefayees's opinion is inconsistent is unclear.  Dr.
     Shefayee assigned Plaintiff a GAF score of 50-55, not 41-50 as Plaintiff suggests.  AR at 403.  A

23   GAF score of 51 to 60 indicates only moderate difficulty in functioning.  *Atkinson*, 2011 WL
     4085414, at *10.  This is consistent with Dr. Shefayee's findings.  In addition, the Commissioner

24   correctly argues that while a GAF score may be helpful in the disability determination, it is not
     necessary.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score

25   may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's
     accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not

26   make the RFC inaccurate.").  With respect to Plaintiff's argument that Dr. Shefayee reached a
     conclusion based on an incomplete record, Plaintiff had the opportunity to, but did not, attend two

27   consultative examinations which would have mitigated any claimed deficiency.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

effectively and that her extreme obesity has exacerbated her current difficulties in chronic back pain, which restrict her ability to ambulate." (Pl.'s Mot. Summ. J. at 16.)  The report, however, indicates that Plaintiff "ambulated with normal gait and without assistive device.  She is able to do tiptoe and heel walking without difficulty.  Sitting, standing, walking, and changing position without any difficulty and comfortably." (AR at 371.)  It does not support Plaintiff's assertion that her alleged obesity restricts her ability to ambulate.

On this record, the Court is satisfied that the ALJ did not err in weighing the medical evidence in the record.  It follows, then, that the ALJ did not err when, based on this evidence, she declined to identify Plaintiff's obesity as a severe impairment or determined that Plaintiff failed to meet or equal a listed impairment. [11]  *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (ALJ did not err by failing to consider claimant's obesity in determining whether she met or equaled a listed impairment where "the only evidence in the record relating to her obesity [were] notes from doctors who observed weight gain, indicated that [claimant was] obese, and recommended that she participate in a medically supervised weight loss program.").

### b.    *Pat Cripe's report*

Plaintiff also challenges the ALJ's determination that the report of Plaintiff's child welfare worker, Pat Cripe, is not probative of her ability to perform work-related activities.  (Pl.'s Mot. Summ. J. at 19, 20.)  She argues (1) that rejecting the report was improper because it is probative of Plaintiff's ability to work with supervisors or the public, (2) that "ALJ Parnow is not a psychologist or a psychiatrist and cannot make such a determination without calling a psychiatrist or a psychiatrist to render an opinion based on this document of Plaintiff's ability to work with supervisors or people in the workplace," (3) that Plaintiff did not give reasons germane to the witness, and (4) that an opinion of a non-medical source who has seen the plaintiff in his or her

---

[11] Plaintiff's contention that the ALJ failed to incorporate the limitations related to her hypertension and obesity when determining her residual functional capacity, Pl.'s Mot. Summ. J. at 2, is also unpersuasive, as the ALJ determined that Plaintiff had no such limitations, AR at 31.  *See Burch*, 400 F.3d at 684 (ALJ's RFC determination was not erroneous where administrative record did not contain any functional limitations resulting from her obesity that the ALJ failed to consider).

professional capacity may outweigh the opinion of a medical source under certain circumstances. (*Id.* at 20.)  All of these arguments lack merit.

Plaintiff's first argument that rejecting Pat Cripe's report was improper because it is probative of Plaintiff's ability to work with supervisors or the public is not persuasive.  The ALJ explained that the report concerns custody issues, not Plaintiff's ability to work.  (AR at 35.)  The ALJ's description of Pat Cripe's report is accurate.  Plaintiff's second argument that it was improper for the ALJ to determine her residual functional capacity also fails.  The residual functional capacity assessment is a determination reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(2) (identifying residual functional capacity as an issue reserved to the Commissioner), and in this case, that assessment is supported by substantial evidence.  Plaintiff's third argument is also unpersuasive.  Here, the ALJ explained that Plaintiff's behavior toward her child welfare worker is not probative of her ability to perform work-related activities.  (*Id.* at 35.)  She noted that a child welfare worker is not an acceptable medical source.  (*Id.*)  She also indicated that the report's content concerned custody issues, not medical evidence.  (*Id.*)  This satisfies the requirement that in order to reject a lay witness's testimony or testimony from "other sources," the ALJ must give reasons germane to the witness.  *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Plaintiff's fourth argument is similarly unavailing.  Plaintiff asserts that under certain circumstances, the opinion of a non-medical source may outweigh the opinion of a medical source.  Plaintiff does not explain what these circumstances are or whether such circumstances are present in this case.  Absent any such explanation, the Court need not entertain this argument.  *See Schlegal*, 720 F.3d at 1210 (declining to consider assertions unsupported by argument).

For these reasons, the ALJ did not err in rejecting the report of child welfare worker Pat Cripe.

2.    <u>The ALJ fulfilled her duty to develop the record.</u>

Plaintiff argues that the ALJ failed to properly develop the record, both as to her ability to read and write and as to the limitations related to her obesity.  (Pl.'s Mot. Summ. J. at 15, 19.)  These arguments fail.

The ALJ has an independent duty to fully and fairly develop the record in a Social Security case. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."  *Id.*

Even assuming that the ALJ's duty to develop the record was triggered in this case, the Commissioner's  argument on this point is persuasive.  (Def.'s Mot. Summ. J. at 7.)  In this case, the ALJ satisfied that duty by holding the record open after the hearing.  *Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge this duty in several ways, including:  subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.") (citations omitted).  The fact that Plaintiff failed to attend the two consultative examinations that were scheduled to take place after the hearing is not the fault of the ALJ, and thus, cannot serve as a basis to reverse her decision. *See* 20 C.F.R. § 404.1518(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.").

3.    The ALJ did not err in evaluating the impact of Plaintiff's drug use.

In her motion, Plaintiff advances the following argument on the issue of the ALJ's finding with respect to her drug use:

> ALJ Parnow found it likely that [Plaintiff's] mental health symptoms are related to her drug use.  (AR 35.)  The materiality determination requires a finding of what residual functional limitations are attributable to meeting the listings as compared with what limitation remains once Chase is without drug issues.  Because ALJ Parnow's decision fails to include the required logic, remand for rehearing is required.  See also SSR 13-2P, 2013 WL 122979, (S.S.A.), March 22, 2013.

Plaintiff's argument fails.  While the Court agrees that the propriety of the ALJ's comment is questionable, *see* AR at 35("Though it is not confirmed by treating sources, I find it likely that her mental health symptoms are related to her drug use."), it is not grounds for remand.

United States District Court
Northern District of California

1   Ninth Circuit law requires that an ALJ "first conduct the five-step inquiry without

2   separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262

3   F.3d 949, 955 (9th Cir. 2001).  The ALJ only proceeds to determining whether any alcoholism

4   or drug addiction is material only if that inquiry results in a finding of disability, and "there is

5   medical evidence of [the claimant's] drug addiction or alcoholism." *Id.*

6   Here, the ALJ completed the five-step inquiry without separating out the impact of

7   alcoholism or drug addiction.  That inquiry, however, resulted in a finding of no disability.

8   *See* AR at 36.  Thus, as the Commissioner argues, the ALJ was not required to engage in the

9   materiality determination.  *See Bustamante*, 262 F.3d at 955; *see also* 20 C.F.R. § 404.1535(a)

10   ("If we find that you are disabled and have medical evidence of your drug addiction or

11   alcoholism, we must determine whether your drug addiction or alcoholism is a contributing

12   factor material to the determination of disability.").  Even if the ALJ's speculation that

13   Plaintiff's mental health symptoms are related to her drug use could be considered tantamount

14   to a finding that such drug use is material, such a finding would invite a harmless error

15   analysis.  *See Molina*, 674 F.3d at 1115 (error harmless where it would not alter the ALJ's

16   decision).  Once the ALJ determined that Plaintiff is not disabled even with her drug use, the

17   materiality determination would not have altered the ALJ's determination that Plaintiff is not

18   disabled.

19   Accordingly, the ALJ's finding that Plaintiff's mental health symptoms are related to

20   her drug use is not grounds for remand.  *See id.* (A Court "may not reverse an ALJ's decision

21   on account of an error that is harmless.") (citation omitted).

22        4.   The ALJ did not err at step five by relying on the grids instead of vocational
23             expert testimony.

24   At step five, the burden of proof shifts to the Commissioner to show that the claimant, based

25   on her residual functional capacity, age, education, and work experience, can perform other work

26   that exists in significant numbers in the national economy.  20 C.F.R. § 404.1560(b)(3).  The

27   Commissioner can satisfy this burden in one of two ways, either by taking the testimony of a

28

United States District Court
Northern District of California

1   vocational expert or by applying the grids.  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d

2   573, 578 (9th Cir. 1988).

3        The grids were adopted to facilitate the disposition of "cases that involve substantially

4   uniform levels of impairment."  20 C.F.R. Pt. 404, Subpt. P, App'x 2.  They "present various

5   combinations of the factors [i.e., residual functional capacity, age, education, and work experience]

6   the [Commissioner] must consider in determining the availability of other work."  *Desrosiers*, 846

7   F.2d at 578.  "For each combination, the tables direct a finding of either 'disabled' or 'not disabled.'"

8   *Id.*

9        While the grids are intended to encourage the Commissioner to "treat like cases alike" and to

10  streamline the administrative process, "there are strict limits" that govern when the Commissioner

11  may properly rely on them.  *Id.*  The Ninth Circuit "has clearly delineated when it is appropriate for

12  the Commissioner to rely on the grids in meeting the burden under Step Five of the five-part

13  disability inquiry."  *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2011).  The Commissioner

14  may apply the grids "'in lieu of taking the testimony of a vocational expert *only when the grids*

15  *accurately and completely describe the claimant's abilities and limitations.*'"  *Desrosiers*, 846 F.2d

16  at 578 (citation omitted; emphasis in original).  "In other words, a claimant must be able to perform

17  the full range of jobs in a given category in order for the Commissioner to appropriately rely on the

18  grids".  *Bruton*, 268 F.3d at 827 (internal quotations and citation omitted).

19        The grids "are based only on strength factors" and "are sufficient only when a claimant

20  suffers only from exertional limitations."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

21  2001).  "The functional limitations caused by anxiety, depression, concentration, and memory

22  impairments are nonexertional limitations."  *Id.*  "[T]he grids are inapplicable when a claimant's non-

23  exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted

24  by the claimant's exertional limitations."  *See Hoopai*, 499 F.3d 1071, 1075 (9th Cir. 2007).

25        Plaintiff argues that the ALJ erred by relying on the grids instead of VE testimony, even

26  though Plaintiff has non-exertional limitations, and by relying entirely on her experience to

27  determine that Plaintiff's non-exertional limitations have little or no effect on the occupational base

28  of unskilled work at all exertional levels.  (Pl.'s Mot. Summ. J. at 20, 21; Pl.'s Reply at 2.)  An ALJ,

23

however, is required to obtain vocational expert testimony only when there are "sufficiently severe" non-exertional limitations that significantly limit the range of work otherwise permitted by a claimant's exertional capacity in such a way that is not accounted for by the grids.  *See Hoopai*, 499 F.3d at 1075.

In this case, the ALJ determined that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels and is able to perform simple repetitive tasks, accept instructions from supervisors, and get along with people in the workplace."  (AR at 32.)  The also ALJ found that Plaintiff has no restriction in activities of daily living, no more than mild difficulties in the area of social functioning, and moderate difficulties in the areas of concentration, persistence, or pace, and no evidence of episodes of decompensation.  *(Id.)*  In light of these limitations, which are supported by substantial evidence in the record, Plaintiff's non-exertional limitations were not sufficiently severe to prohibit the ALJ from relying on the grids at step five. *See Hoopai*, 499 F.3d at 1075 (mild or moderate limitations resulting from depression did not prohibit use of the grids).  Thus, the ALJ did not err when she declined to hear vocational expert testimony at this step.

Plaintiff's additional argument—that the ALJ erred by relying on her own experience in finding that Plaintiff's nonexertional limitations have little or no effect on the occupational base of unskilled work at all exertional levels—also lacks merit.  As the Commissioner argues, the grids reflect the number of unskilled jobs in the national economy at various exertional levels (sedentary, light, medium, heavy, and very heavy).  20 C.F.R. Pt. 4, App'x 2, § 200(b).  Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  It includes "handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment [is] needed."  *Id.*  This type of work, then, by definition, accommodates a limitation to simple, repetitive tasks.  *See Lopez v. Astrue*, No. C-09-03483 RMW, 2011 WL 3206958, at *9 (N.D. Cal. July 27, 2011).  In light of this, the ALJ did not err when, even

though she relied entirely on her own experience, she concluded that Plaintiff's nonexertional

limitations have little or no effect on the occupational base of unskilled work at all exertional levels.

### IV.     CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, and

the Commissioner's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATE: September 12, 2014

KANDIS A. WESTMORE
United States Magistrate Judge